UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JUNE G. ANDERS, ) | CASE NO. 5:11CV2098 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE SARA LIOI |
| ) | Magistrate Judge George J. Limbert |
| v. ) | |
| ) | |
| DOLGENCORP, L.L.C. et al., ) | **Report and Recommendation of** |
| ) | **Magistrate Judge** |
| Defendants. ) | |

The above case is before the undersigned[1] on a motion for summary judgment filed by Defendants Dolgencorp, L.L.C. doing business as Dollar General, and Dolgen Midwest, L.L.C., doing business as Dollar General Stores (collectively "Defendants") as to Plaintiff June G. Anders' ("Plaintiff") only remaining cause of action for age discrimination under Ohio law. ECF Dkt. #25.  Plaintiff has filed a brief in opposition to the motion.  ECF Dkt. #34.  Defendants have filed a reply brief.  ECF Dkt. #35.

For the following reasons, the undersigned recommends that the Court GRANT Defendants' motion for summary judgment and dismiss Plaintiff's sole remaining claim against Defendants WITH PREJUDICE.  ECF Dkt. #25.

**I.    FACTS AND PROCEDURAL HISTORY**

On October 4, 2011, Plaintiff, a 61 year-old former assistant manager at Dollar General in Bolivar, Ohio, filed a complaint in this Court pursuant to diversity jurisdiction against Defendants, who operate Dollar General and are employers under Ohio Revised Code section

---

[1] On December 19, 2011, Judge Lioi referred this case to the undersigned for general pretrial supervision, including the preparation of reports and recommendation on dispositive motions. ECF Dkt. #20.

1

4112. ECF Dkt. #2. Plaintiff advanced the following causes of action in her complaint: (1) age discrimination in violation of Ohio Revised Code sections 4112.14 and 4112.99; (2) violation against Ohio's public policy; (3) the intentional infliction of emotional distress; and (4) punitive damages. *Id.*

Plaintiff avers in her complaint that she was employed as an assistant manager of the Bolivar Dollar General from May of 2007 until she was terminated from employment on October 8, 2010. ECF Dkt. #2 34 at 956. She alleges that notwithstanding a written zero-tolerance policy for employees working off of the clock, that is, working but not reporting the time worked on the timekeeping system, working off of the clock was encouraged and it was expected that employees would do so and they did so without reprimand. ECF Dkt. #2 at 11.

Plaintiff asserts that on or about September 18 and 19, 2010, her store manager, Scott Fritz, who knew that employees worked off of the clock, instructed and encouraged them to do so. ECF Dkt. #2 at 11. She avers that Mr. Frtiz went on vacation and she worked off of the clock during that time in order to get work done by a deadline and to retrieve bags for a new employee. *Id*. Plaintiff avers that when Scott Fritz returned from vacation, he reviewed the videotapes of the prior two days of work when he was absent and saw that Plaintiff had worked off of the clock and reported it to his district manager, Janice Urbas. *Id*. at 11-12.

Plaintiff states that on October 8, 2010, Ms. Urbas terminated her employment based upon her investigation of Mr. Fritz's report that Plaintiff had worked off of the clock in September of 2010. ECF Dkt. #2 at 12. Plaintiff claims that she never received a disciplinary warning or review before termination, and she alleges that she was unlawfully terminated due to her age and was treated less favorably than and replaced by someone substantially younger. *Id*. at 12. Plaintiff claims that Defendants' decision to terminate her employment was motivated, in whole or in part, by her age. *Id*.

On December 19, 2011, Judge Lioi issued a Memorandum Opinion and Order granting Defendant's motion to dismiss Plaintiff's claims of public policy violation and intentional infliction of emotional distress. ECF Dkt. #19 at 190-191. Judge Lioi also granted Defendants' motion to strike Plaintiff's request for compensatory damages, punitive damages, "lost earning potential" and request for a jury trial. *Id*. at 193. Consequently, Plaintiff's sole remaining claim before this Court is her age discrimination claim under Ohio law.

On October 1, 2012, Defendants filed the instant motion for summary judgment. ECF Dkt. #25. On October 26, 2012, Plaintiff filed a brief in opposition to the motion for summary judgment. ECF Dkt. #34. On November 9, 2012, Defendants filed a reply brief. ECF Dkt. #35.

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides in pertinent part that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Civ. P. 56, Advisory Committee Notes ("The standard for granting summary judgment remains unchanged" despite 2010 amendments to Rule 56). Rule 56(c)(1) outlines the procedures for supporting or opposing a motion for summary judgment, stating that:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Rule 56(c)(3) provides that the Court need only consider cited materials in

3

determining a motion for summary judgment, but the Court may consider other materials presented in the record but not called to the Court's attention by the parties. Fed. R. Civ. P. 56(c)(3), advisory committee notes to 2010 Amendments.

The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed.R.Civ.P. 56(e). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough; the evidence must be such that a reasonable jury could find for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.  LAW AND ANALYSIS

Defendants move for summary judgment on Plaintiff's only remaining claim of age discrimination in violation of Ohio law. ECF Dkt. #25-1 at 217-226. Defendants assert that the same-actor inference precludes a finding of age discrimination, Plaintiff's age discrimination claim fails as a matter of law, and Plaintiff cannot establish pretext even if she could establish a prima facie case of age discrimination. *Id.* Plaintiff responds that she can establish genuine issues of material fact of a violation of the Ohio age discrimination statute by both direct and indirect evidence. ECF Dkt. #34 at 967-970.

### A.  AGE DISCRIMINATION UNDER OHIO REVISED CODE § 4112

Ohio Revised Code section 4112.14 provides in relevant part:

> A) No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.
>
> (B) Any person aged forty or older who is discriminated against in any job opening or discharged without just cause by an employer in violation of division (A) of this section may institute a civil action against the employer in a court of competent jurisdiction. If the court finds that an employer has discriminated on the basis of age, the court shall order an appropriate remedy which shall include reimbursement to the applicant or employee for the costs, including reasonable

> attorney's fees, of the action, or to reinstate the employee in the employee's former position with compensation for lost wages and any lost fringe benefits from the date of the illegal discharge and to reimburse the employee for the costs, including reasonable attorney's fees, of the action. The remedies available under this section are coexistent with remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code; except that any person instituting a civil action under this section is, with respect to the practices complained of, thereby barred from instituting a civil action under division (N) of section 4112.02 of the Revised Code or from filing a charge with the Ohio civil rights commission under section 4112.05 of the Revised Code.

Ohio Rev. Code § 4112.14.

The elements and burden of proof to establish an age-discrimination under Ohio law parallel the analysis of an Age Discrimination in Employment Act claim under federal law, 29 U.S.C. § 623. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998); *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 803 N.E.2d 781, 786 (2004). A plaintiff may establish age discrimination through the presentation of either direct or circumstantial evidence. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994).

### 1. **DIRECT EVIDENCE OF DISCRIMINATION**

Plaintiff alleges that District Manager Janice Urbas, who terminated her employment, and her store manager, Scott Fritz, who made recommendations to Ms. Urbas as to hiring, discipline and termination, both made comments constituting direct evidence of age discrimination. ECF Dkt. #34 at 966-967. She cites comments made by Ms. Urbas about getting "new kids on the block" and "hiring some new people after the other people had quit or been fired." *Id.* at 967. She also cites comments made by Mr. Fritz that "we need to get rid of the old ones here" and his comments that Plaintiff moved and walked slowly. *Id.* Plaintiff concludes that all of these comments were directed toward her since she was the oldest employee at Dollar General. *Id.*

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir.2004) (citing *Manzer*, 29 F.3d at 1081). It is "evidence from the lips of the defendant proclaiming his or her...animus." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998)(internal quotation marks omitted). In age discrimination cases, the Court evaluates allegedly discriminatory

5

remarks of an employer by looking at four factors: "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002), quoting *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994). No individual factor is dispositive of age discrimination and all factors must be evaluated as a whole, taking all of the circumstances into account. *Id.* The Ohio Supreme Court has held:

> There must be a link or nexus between the discriminatory statement or conduct and the prohibited act of discrimination to establish a violation of the statute ... Therefore, we hold that, in a cause of action for age discrimination under R.C. 4112.02 or 4112.14, when relying upon the direct evidence standard ... an employee must prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination to establish a violation.

*Byrnes v. LCI Comm. Holdings Co.*, 77 Ohio St.3d 125, 672 N.E.2d 145, 149 (1996). While the temporal connection between the discriminatory statement and the adverse employment action is important, "[s]ubstantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Diebel v. L&H Resources, L.L.C.*, No. 10-2035, 2012 WL 2817948, at *4 (6th Cir. July 10, 2012), unpublished, quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010.). A claim of direct evidence of age discrimination weakens when more time passes between the allegedly discriminatory comment and the adverse employment action, when all other factors are equal. *Id.*

The undersigned recommends that the Court find that even if Ms. Urbas did make remarks about getting "some new kids on the block" and "hiring some new people after the other people had quit or been fired," these comments do not constitute direct evidence of age discrimination. ECF Dkt. #34 at 967. Ms. Urbas, the district manager and the person who terminated Plaintiff's employment, qualifies as a decision-maker in this case. ECF Dkt. #34-3 at 1009. Thus, the first factor of direct evidence of age discrimination is met. However, the comments that she allegedly made do not meet the last three factors of the test. Plaintiff presents no evidence that the comments were related to Plaintiff's age or to Ms. Urbas' decision to

6

terminate her employment.

First, Plaintiff testified in her deposition that Ms. Urbas never made any inappropriate comments to her regarding her age. ECF Dkt. #35 at 1097, citing ECF Dkt. #25-2 at 70. Secondly, the comments were not directly made to Plaintiff, but were apparently overheard by Plaintiff's co-worker, Joelle Oliver, who was not even sure whether Ms. Urbas made the comments. Ms. Oliver testified that she heard Brock Goff, the store manager who replaced Mr. Fritz, and Ms. Urbas talking once about how they were going to "get some new kids on the block, and they were only hiring new people after the other people had quit or been fired." ECF Dkt. #34-7 at 1071. When asked further in deposition about these comments, Ms. Oliver testified that she was unsure whether Mr. Goff made the comment or whether it was Ms. Urbas, but she indicated that "the other one agreed." ECF Dkt. #31-1 at 811. She said that she caught "more than a little snippet" of the conversation, and "it sounded like they wanted to get some new people in there." *Id.* However, Ms. Oliver provided the following additional testimony:

| Q [Plaintiff's counsel]: | And exactly what did, whoever said it, what did they say? |
| A [Ms. Oliver]: | Just getting some new kids on the block is what they exactly said, and I don't know, to make the store better. |
| Q: | So the kids who were on the block at that time would include you? |
| A: | Yes. |

*Id.* at 812. Ms. Oliver also identified other workers, including those around the age of 40 when asked "[w]hat other kids were on the block at that time?" *Id.* When asked if "they were just talking about wanting to get some new employees in," Ms. Oliver responded that "[i]t's possible it could be thought that way." *Id.* Thus, the comments, even if it were established that they were made by Ms. Urbas, do not show direct evidence that she wanted to fire older employees and fired Plaintiff due to her age.

Moreover, according to Ms. Oliver's testimony, these comments were made well after Ms. Urbas terminated Plaintiff's employment. Ms. Oliver indicated that the comments were made when Mr. Goff was the Bolivar store manager, which was after Mr. Fritz had transferred

7

from that store to another store on or around January 29, 2011. ECF Dkt. #28-1 at 586. Mr. Goff replaced Mr. Fritz two months after Mr. Fritz left the Bolivar store, which therefore would have been around March 29, 2011. ECF Dkt. #33-1 at 923. Ms. Urbas terminated Plaintiff's employment on October 8, 2010, well before any of these alleged comments were made. ECF Dkt. #34 at 955.

Thus, even presuming that Ms. Urbas was the one who made the comments overheard by Ms. Oliver, the comments require one to make an inference that the comments were somehow related to Plaintiff's age and were related to Ms. Urbas' decision to terminate Plaintiff's employment. The Sixth Circuit has held that a comment is not direct evidence when it admits "more than one plausible interpretation, and requires a significant inference or presumption on the part of the trier of fact to come to the conclusion" that a plaintiff propounds. *Norbuta v. Loctite*, No. 98-4162, 1 Fed. App'x 305, 313 (6th Cir. Jan. 8, 2001), unpublished, citing *Lautner v. American Tel. and Tel. Co.*, No. 95-3756, 1997 WL 26467, at *3 (6th Cir. Jan. 22, 1997), unpublished. Moreover, the comments were made well after Plaintiff's employment was terminated. Accordingly, the undersigned recommends that the comments allegedly made by Ms. Urbas do not constitute direct evidence of age discrimination.

Plaintiff also cites to comments that Mr. Fritz allegedly made to employee Jeannie Hall in late December 2009 or early January 2010 that "we need to get rid of the old ones here" and comments that Plaintiff moved and walked slowly. ECF Dkt. #34 at 964. Plaintiff asserts that these comments were directed to her because she was the oldest employee at the store.

It appears that the first prong of the direct evidence test is not met since the only evidence that Plaintiff offers that Mr. Fritz was a decision-maker in terminating her employment is her own assertion of such. Both Mr. Fritz and Ms. Urbas testified that Mr. Fritz did not participate in the decision to terminate Plaintiff's employment, and he was not present when Ms. Urbas terminated Plaintiff's employment. ECF Dkt. #27-1 at 512 (Ms. Urbas testified that while Mr. Fritz watched the videotape of Plaintiff working off of the clock with her, they did not discuss what actions would be taken against her); ECF Dkt. #27-1 at 513 (Ms. Urbas testified that only she and Plaintiff were present when Ms. Urbas had Plaintiff write a statement that she did not

8

work off of the clock and then showed her the videotape showing the contrary); ECF Dkt. #27-1 at 508, 515 (Ms. Urbas testified that "Tammy [Fudge, the field employee relations person] partnered with me on June's termination."); ECF Dkt. #27-1 at 520 (Ms. Urbas answering "no" when asked if Mr. Fritz participated in any way in terminating Plaintiff's employment); ECF Dkt. #27-1 at 520 (Ms. Urbas recalling that she did not inform Mr. Fritz until perhaps the day before she terminated Plaintiff's employment so that he would have coverage at the store). Further, no evidence was presented to show that Mr. Fritz had influence over Ms. Urbas' decision to terminate Plaintiff's employment beyond Plaintiff's assertion of such.

Nevertheless, even if the first factor were met, there is no showing that the statements allegedly made by Mr. Fritz were related to the decision-making process of terminating Plaintiff's employment. Further, the statement about getting "rid of the old ones" was an isolated remark and was made in late December 2009 or early January 2010, nine months before Ms. Urbas terminated Plaintiff's employment. ECF Dkt. #34-4 at 1027, 1031. The Sixth Circuit has found that allegedly age-based comments made by an employer less than nine months before the termination of an individual's employment are too distant in time from termination in order to give rise to direct evidence of age discrimination. *See Rosso v. A.I. Root Co.*, No. 02-4384, 97 Fed. App'x 517, 520 (6th Cir. Apr. 13, 2004), unpublished (company president's remarks too isolated and ambiguous when he told employee's supervisor that employee was "old," had "severe memory loss," and possibly "early Alzheimer's disease" six and one-half months before termination of employment); *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025-1026 (6th Cir. 1993)(supervisor's comments made eight months before termination of employment too isolated and ambiguous to support finding of age discrimination). For these reasons, the undersigned recommends that the Court find that Mr. Fritz's comments are not direct evidence of age discrimination

Moreover, the undersigned recommends that the Court find that Mr. Fritz's isolated comment about "getting rid of the old ones" is the "sort of stray remark that is routinely dismissed as a basis for an inference of an intent to discriminate." *Swanson v. McKesson Corp.*, No. 1:04CV454, 2006 WL 143223, at (S.D. Ohio Jan. 18, 2006)(direct supervisor's reference to

9

plaintiff as "old guy" on occasion was stray remark and no direct evidence of age discrimination); *Fabec v. STERIS Corp.*, No. 1:04CV2062, 2005 WL 2313916, at *3 (N.D. Ohio Sept. 21, 2005), unpublished (director's comments to managers and to another employee that "I need to get rid of the old people" did not establish direct evidence of age discrimination as they were no more than isolated remarks too remote in time to the termination of plaintiff's employment in order to be relevant). The Court should find that Mr. Fritz's comment about Plaintiff walking and moving slowly also suffers the same fate, since one has to infer that Mr. Fritz meant that Plaintiff walked slowly because of her age and that Plaintiff's employment was terminated because she walked slowly due to her age.

For the foregoing reasons, the undersigned recommends that the Court find that the comments presented by Plaintiff fail to establish direct evidence of age discrimination.

### 2. **INDIRECT EVIDENCE OF AGE DISCRIMINATION**

In addition to or alternatively, a plaintiff may establish age discrimination by using circumstantial or indirect evidence. In order to set forth a prima facie case of age discrimination using indirect or circumstantial evidence, an employee must show under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) that she (1) was a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position held, and (4) was replaced by a person or treated less favorably than someone outside of the protected class. *Tuttle v. Metro. Gov't of Nashville,* 474 F.3d 307, 317 (6th Cir. 2007).

If an employee establishes a prima facie case of age discrimination, "the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action." *Schoonmaker v. Spartan Graphics Leasing, L.L.C.*, 595 F.3d 261, 264 (6th Cir. 2010), quoting 29 U.S.C. § 623(a)(1). If the employer meets its burden of production, the burden of production shifts back to the employee to show that the employer's stated reason was mere pretext. *Id*. The employee must produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her." *Blizzard v. Marion Technical College*, 698 F.3d 275, 285 (6th Cir. 2012), quoting *Chen v. Dow Chem. Co.*,

10

580 F.3d 394, 400 (6th Cir.2009). The employee can do this by proving " '(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her discharge], or (3) that they were *insufficient* to motivate discharge.' " *Blizzard*, 698 F.3d at 285, quoting *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir.2012) (emphasis in original) (quoting *Manzer v. Diamond Shamrock Chems.* Co., 29 F.3d 1078, 1084 (6th Cir.1994), overruled on other grounds, *Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009)). "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Blizzard*, 698 F.3d at 285, quoting *Chen*, 580 F.3d at 400 n. 4.  The burden of persuasion remains on the plaintiff throughout to show that "age was the 'but-for' cause of the employer's adverse action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009); *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir.2009).

Defendants focus on Plaintiff's inability to establish pretext, thus apparently conceding that Plaintiff can otherwise meet the elements of a prima facie case, at least for summary judgment purposes.  ECF Dkt. #25-1 at 221; ECF Dkt. #35 at 1100.  Since Defendant appears to concede for purposes of this motion that Plaintiff can establish a prima facie case of age discrimination, the undersigned will proceed to the next steps in the analysis, that is, determining whether Defendant has provided a legitimate, nondiscriminatory reason for terminating Plaintiff's employment and thereafter whether Plaintiff can show that Defendant's reason for terminating her employment was merely pretext for age discrimination.

The undersigned recommends that the Court find that Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. Defendant asserts that it terminated Plaintiff's employment because she worked off of the clock in violation of its Wage and Hour Policy and "Tracking Work Time Policy" which was set forth in written form and given to Plaintiff. ECF Dkt. #25-1 at 213-214.  Plaintiff admitted in her deposition that she received a copy of the policy, which stated in relevant part that working off of the clock was a serious violation of company policy, defined working off of the clock, and warned that even a first offense could lead to immediate termination of employment.  ECF Dkt. #25-2 at 238-241. Plaintiff also testified that she did work off of the clock for a total of four

11

hours on September 18, 2010 and September 19, 2010 while Mr. Fritz was on vacation. *Id*. at 247. She testified that when Ms. Urbas came to the store to ask her about working off of the clock during that time period, she initially did what Mr. Fritz advised her to do, which was to tell Ms. Urbas that she did not work off of the clock. *Id.* at 248-249. However, after Plaintiff completed a written statement indicating that she did not work off of the clock, Ms. Urbas played the videotape showing Plaintiff working off of the clock and Plaintiff modified her statement to indicate that she was in the stockroom looking for register bags with another employee because that employee was new to the job and she was helping her. *Id*. at 249. After Ms. Urbas stated that she would conduct an investigation, she returned a week later and terminated Plaintiff's employment. *Id.* at 251, 253. The undersigned recommends that the Court find that Defendant has met its burden of providing a legitimate reason for terminating Plaintiff's employment.

Thus, the burden shifts back to Plaintiff to establish that the stated reason that Defendant gave for terminating her employment was merely pretextual. *Blizzard,* 698 F.3d at 285. In support of pretext, Plaintiff points to two other instances where younger workers who worked off of the clock did not get fired and in fact suffered no disciplinary action at all. ECF Dkt. #34 at 970. Plaintiff cites to violations by Billie Jo Kurzinsky, a thirty-eight year old individual, and Valerie Montgomery, a forty-eight year old individual, who both worked off of the clock and were not disciplined, much less fired, for doing so. *Id.* at 969-970. Thus, it appears that Plaintiff is attempting to show pretext through the third method, which is to establish that Defendant's articulated reason for terminating her employment was insufficient to actually motivate the termination. In order to do so, Plaintiff must show that "other employees, particularly employees not in the protected class, were not fired even though they were engaged in substantially identical conduct to that which the employer contends motivated its discharge." *Blizzard*, 698 F.3d at 289, quoting *Manzer,* 29 F.3d at 1084. Exact correlation is not required for a comparator, "but the comparator must be similar in all of the relevant aspects." *Ercegovich*, 154 F.3d at 352. The comparator employees who were not fired must also have been disciplined by the same supervisor, subjected to the same standards of conduct, and engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their

12

conduct or the employer's treatment of them for it." *Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir. 2000), quoting *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998), quoting *Mitchell v. Toledo Hosp.*, 964 F.3d 577, 483 (6th Cir.1992). Plaintiff must prove the insufficiency of Defendant's reason by a "preponderance of the evidence." *Id.*

Plaintiff first points to the testimony of Billie Jo Kurzinsky, who testified that on November 7, 2010, she took a deposit to the bank for Mr. Fritz after store hours when Mr. Fritz called her at 9:25 p.m. because he had left the store earlier and forgot to make the deposit. ECF Dkt. #29-1 at 671-673. Ms. Kurzinsky testified that she found out later that it was a violation of company policy for her to make the deposit. *Id.* at 671. She testified that she called Ms. Montgomery for instruction because she had just started working one month prior, and Ms. Montgomery told her that she was not allowed to make the deposit, but nevertheless walked her through the process. *Id.* at 676-677. Ms. Kurzinsky acknowledged that bank deposits were supposed to be made during store hours and that employees should be on the clock when making deposits. *Id.* at 672. When asked whether she was paid for making this deposit, she answered that she was not paid for it, but Mr. Fritz had told her that he was going to fix her time, although she could not recall if he had done so. *Id.* at 673.

Ms. Kurzinsky testified that Ms. Urbas approached her a few weeks later about the incident and she informed Ms. Urbas that she took the deposit because she was told to do so by her store manager. ECF Dkt. #29-1 at 678. Ms. Kurzinsky indicated that Ms. Urbas told her that sometimes store managers do not always tell employees the right thing to do. *Id.* at 679. Ms. Urbas told Ms. Kurzinsky that she would investigate the incident and Ms. Kurzinsky indicated that she never heard about it again. *Id.*

The undersigned recommends that the Court find that Ms. Kurzinsky was not similarly situated to Plaintiff and did not engage in substantially identical conduct as that of Plaintiff. Ms. Kurzinsky was a new, lower-level employee who was told by the store manager to make a deposit after hours. ECF Dkt. #29-1 at 671-673. The Sixth Circuit has held that "[d]ifferences in job title and responsibilities, experience, and disciplinary history may establish that two employees are not similarly situated." *Campbell v. Hamilton Cty.*, No. 00-3116, 23 Fed. App'x

13

317, 2001 WL 1322785, at **6 (6th Cir. Oct. 17, 2001), unpublished, citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). Moreover, Ms. Kurzinsky indicated that at the time she left the store to make the deposit, she did not know she was not permitted to do so and was merely following the instructions of her store manager. *Id*. at 675-677. She indicated that she felt that she had to follow his instructions or risk being disciplined or fired. *Id.* at 677. Further, when asked by Ms. Urbas about making the deposit, she admitted that she made the deposit and she made it at the direction of Mr. Fritz. *Id*. at 678.

Plaintiff, on the other hand, was an assistant manager with three years of experience who knew Defendant's strict policy against working off of the clock, did it anyway, and initially denied doing so when confronted by Ms. Urbas. ECF Dkt. #26-1 at 376, 404. It was not until Ms. Urbas played her the store videotape showing her working off of the clock and asked if she wanted to change her written statement when Plaintiff admitted to being in the stockroom looking for bags for the registers after clocking out. *Id.* at 404.

For these reasons, the undersigned recommends that the Court find that Ms. Kurzinsky was not similar in all relevant aspects to Plaintiff and did not engage in substantially identical conduct as that of Plaintiff.

Regarding Ms. Montgomery, she testified that she was hired as a "third key" position, which was a supervisory position. ECF Dkt. #33-1 at 921. She then replaced Plaintiff when Plaintiff's employment was terminated. *Id.* at 922. Ms. Montgomery testified that she worked off of the clock one time as assistant manger when a new employee, Ms. Kurzinsky, who was still in training for the third key position, became frustrated when trying to close the store and account for the monies to make a deposit. *Id*. at 922-927. Ms. Montgomery testified that she came to the store, did not clock in because she "wasn't there to work" and stood behind Ms. Kurzinsky in the office to encourage Ms. Kurzinsky to keep going and then they walked out together. *Id*. at 925-926. Ms. Montgomery testified that she did not physically do any of the work for Ms. Kurzinsky, but merely walked her through the procedure. *Id*. at 928.

Ms. Montgomery recalled that the following day, Ms. Urbas came into the store and she handed Ms. Urbas her store keys, explaining that the camera would show that she was there the

14

prior night when she was not supposed to be.  ECF Dkt. #33-1 at 928.  Ms. Montgomery said that she told Ms. Urbas she worked off of the clock and handed her the keys to the store because she figured that Ms. Urbas would fire her because Plaintiff had gotten fired for working off of the clock.  ECF Dkt.#33-1 at 927-928.  Ms. Montgomery testified that Ms. Urbas told her not to worry about it because she had done a good thing by helping Ms. Kurzinsky and she would be compensated for the extra half hour that she spent helping Ms. Kurzinsky.  *Id*. at 928.  Ms. Montgomery testified that she was compensated for her time.  *Id.*

It is true that both Plaintiff and Ms. Montgomery were assistant managers when they worked off of the clock and both of their incidents were reported to Ms. Urbas, the district manager.  ECF Dkt. #27-1 at 509-513, 516, 532-533.  Further, Ms. Urbas considered both of the incidents and determined the courses of action to take as to each, firing Plaintiff for working off of the clock and directing that Ms. Montgomery be paid for time that she spent working off of the clock.

It is also true that comparators need not be exactly identical, but they must be identical "in all relevant aspects." *Ercegovich*, 154 F.3d at 352.  However, the undersigned recommends that the Court find that a number of "differentiating circumstances" exist that distinguish the conduct of Plaintiff from that of Ms. Montgomery and Defendant's treatment of each of them for their conduct.  *Smith,* 220 at 762; *Ercegovich,* 154 F.3d at 352; *Mitchell*, 964 F.3d at 483.  First and most importantly, when Ms. Urbas asked Plaintiff if she had worked off of the clock, Plaintiff did not tell her the truth.  ECF Dkt. #26-1 at 404.  Plaintiff even went so far as to sign a statement declaring that she did not work off of the clock.  *Id*. at 462.  It was not until Ms. Urbas showed Plaintiff the store videotape of her working after hours that Plaintiff admitted to doing so and modified her written statement.  ECF Dkt. #27-1 at 513.  In contrast, Ms. Montgomery actually approached Ms. Urbas the day after she worked off the clock, handed Ms. Urbas the store keys, and informed Ms. Urbas that she had worked off of the clock the night before.  ECF Dkt. #27-1 at 532-533.  Secondly, Plaintiff worked off of the clock two days in a row, while Ms. Montgomery worked for one half-hour on one night.  ECF Dkt. #25-2 at 247; ECF Dkt. #33-1 at 927.  And finally, Plaintiff actually performed work activity while working off of the clock,

15

while Ms. Montgomery merely stood behind Ms. Kurzinsky and directed and encouraged her as to how to perform her duties because Ms. Kurzinsky was new to closing the store. ECF Dkt. #25-1 at 249; ECF Dkt. #27-1 at 531-535; ECF Dkt. #33-1 at 927-929. Moreover, a distinction was made by Ms. Urbas that Ms. Montgomery came back to the store to help Ms. Kurzinsky and never clocked in while she was there, while Plaintiff clocked out from her shift and then stayed at the store and worked off of the clock after clocking out. ECF Dkt. #27-1 at 532-534.

For these reasons, the undersigned recommends that the Court find that Ms. Montgomery's conduct and Defendant's treatment of that conduct is sufficiently distinguishable from that of Plaintiff such that Plaintiff cannot use Ms. Montgomery's conduct as a comparator in order to establish pretext.

Accordingly, the undersigned recommends that Plaintiff has failed to meet her burden of establishing that Defendant's articulated reason for terminating her employment was insufficient to actually motivate the termination because she has failed to show that other employees outside of the protected class were not fired even though they were engaged in substantially identical conduct to hers.

### B. SAME-ACTOR AND SAME-GROUP INFERENCES

Finally, Defendants contend that the same-actor inference bars a finding that Plaintiff's age was the "but for" cause of the termination of her employment. ECF Dkt. #25-1 at 219. They assert that because Ms. Urbas hired Plaintiff at the age of 58, just two years prior to firing her, the Court must dismiss Plaintiff's age discrimination claim. Defendants cite caselaw purportedly supporting its position. Defendants cite to various Sixth Circuit cases holding that a person who has a bias against a protected class would not hire a person in that class only to later terminate their employment because of that discriminatory bias. *Id*. at 219-220, citing and quoting *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 801 (6th Cir. 2007) and citing *Wofford v. Middletown Tube Works, Inc*., 67 Fed. App'x 312 (6th Cir. 2003).

The same-actor inference is recognized by the Sixth Circuit as allowing "one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 572 (6th Cir. 2003). However, the Sixth Circuit

16

has specifically rejected "the idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual." *Id*. at 573. The Court held that "where...the factfinder decides to draw the same-actor inference, it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact." *Id*. at 573-574. Thus, to the extent that Defendants request summary judgment solely on the basis of the same-actor inference, the undersigned recommends that the Court deny this request.

Defendants also suggest that because Ms. Urbas was near Plaintiff's age when she hired and fired Plaintiff, a same-group inference applies such that one member of a group is unlikely to discriminate against another member of the same group. ECF Dkt. #25-1 at 221; *see also Wexler*, 317 F.3d at 574. In *Wexler*, the Sixth Circuit noted that the United States Supreme Court had rejected this inference in race and gender discrimination cases and it was thus applying the same reasoning of that Court to age discrimination cases. 317 F.3d at 574, citing and quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Thus, the undersigned recommends that the Court reject Defendants' assertion of the same-group inference to the extent that Defendants assert that this Court should grant summary judgment in its favor solely upon that basis.

## IV. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court GRANT Defendants' motion for summary judgment (ECF Dkt. #25) and dismiss Plaintiff's sole remaining claim WITH PREJUDICE.

DATE: January 10, 2013   */s/ George J. Limbert*
  GEORGE J. LIMBERT
  UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).